IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01513-WYD-KMT

SCOTT SHAW,

    Plaintiff,

v.

PLAY DIRTY COLORADO ATV TOURS, L.L.C., a Colorado limited liability company;
POLARIS INDUSTRIES, INC., a Minnesota corporation; and
JOHN DOE CORPORATION, an unknown Colorado business entity,

    Defendants.

---

**ORDER ON SUMMARY JUDGMENT**

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant Polaris Industries Inc.'s Motion for Summary Judgment filed June 30, 2008. A response was filed on July 25, 2008, and a reply was filed on August 12, 2008.

The summary judgment motion asserts that Plaintiff seeks to impose liability on Polaris Industries, Inc. ["Polaris'], the manufacturer of an all-terrain vehicle ["ATV"], simply because Plaintiff was injured when he rode the ATV. Polaris contends that Plaintiff has not disclosed any evidence to establish that the ATV, a 2002 Polaris Sportsman 500 HO, is defective and unreasonably dangerous. Similarly, Polaris argues that Plaintiff has not disclosed any evidence to establish that Polaris breached any express warranty provided to Plaintiff regarding the ATV. Accordingly, Polaris asserts that it is entitled to summary judgment.

Plaintiff asserts in response that he is an incomplete quadriplegic and that he suffered a serious burn to his inner left ankle while riding the ATV due to the clutch cover becoming overheated. He alleges that the clutch cover housing is made of an engineered plastic composite material, and its purpose is to protect the rider from components subject to movement and drastic temperature change beneath the cover. It is argued that there are genuine issues of material fact with regard with whether Polaris' ATV was unreasonably dangerous due to its failure to warn customers of the risk associated with excessive overheating and defective production of the clutch cover. Accordingly, Plaintiff contends that Polaris' Motion for Summary Judgment should be denied.

For the reasons stated below, Polaris' Motion for Summary Judgment is granted in part and denied in part.

II.  FACTUAL BACKGROUND AND ALLEGATIONS

On July 17, 2005, Plaintiff and his family participated in a 6-hour ATV tour ride given by Puda Companies, Inc. d/b/a/ Colorado ATV Tours ["Puda"]. Plaintiff rode a 2002 Sportsman 500 HO ATV manufactured by Polaris. Plaintiff's family, his wife, daughter and two sons, rode other Polaris ATVs.

At the time of the ride, Plaintiff was an incomplete quadriplegic, having become paralyzed 28 years before the ride as a result of diving into shallow water. Plaintiff had some muscle tone and function in his lower extremities prior to beginning the ride but very little feeling n his legs. As a result of sitting on the ATV continuously for six (6) hours, Plaintiff's legs had gone completely numb.

At the beginning of the tour, Puda's owner provided riding instructions to the Shaw family. Puda did not require the Shaw family to wear the protective riding gear listed in the owners' manual as appropriate for riding ATVs. Polaris' owner's manual instructs riders to wear a helmet, eye protection, gloves, "over the calf type boots", and long sleeves and pants. Plaintiff wore during the ride a t-shirt, jeans and tennis shoes with no socks. Puda did provide Plaintiff a helmet which he wore on the ride.

After the ATV tour ride, while changing his clothes back at the hotel, Plaintiff noticed a burn on his inner left calf. Plaintiff's expert Thomas Feiereisen ["Feiereisen"] opines that this was a serious burn caused by contact with the clutch cover housing on the lower left side of the ATV. Plaintiff alleges that he was permanently and severely injured as a result of this.

Plaintiff's Amended Complaint, among other things, in the negligence claim asserts that Polaris "breached its duty of care owed to consumers and users of its products because the A.T.V. was defectively designed . . . . " (Am. Comp., ¶ 38.) The Amended Complaint also asserts that the ATV "was not as safe as it had been expressly warranted to be" because "it was in a defective and unreasonably dangerous condition." (*Id.*, ¶ 47.)

On April 2, 2008, Feiereisen provided an expert opinion in this case. Feiereisen's report provided a number of "conclusions" or opinions about Puda's negligence. Polaris contends that absent from the report are any opinions or conclusions that the ATV at issue was defectively designed and/or unreasonably dangerous. Further, Feiereisen opines that had Plaintiff "been wearing the minimum

protective footwear (strong, over-the-ankle boots)", similar to what Polaris instructs riders to ride, Plaintiff's injury would not have occurred. While Plaintiff denies the above statements regarding Feiereisen's report, the only evidence that he relies on in connection with this denial is the fact that Polaris had notice of at least one incident of a temperature at the clutch cover high enough to melt the cover and potentially cause a burn injury (through a Field Problem Inquiry of May 29, 2002). Plaintiff asserts that there is no evidence that Polaris investigated that incident. However, the fact that this other incident occurred and/or was not investigated does not address the material facts stated in Polaris' motion regarding Feiereisen's report.

It is undisputed that the 2002 Polaris Sportsman 500 HO ATV Safety and Maintenance manual fails to warn potential operations of the risk that the clutch cover could reach temperatures excessive enough to cause injury. However, the manual does instruct riders that "ATV riding requires special protective clothing which will make you feel more comfortable and reduce chances of injury."

III.  ANALYSIS

   A.  Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.     Whether Summary Judgment is Proper

There are three general areas of the manufacturing process that lead to strict liability claims: "(1) Physical flaws due to improper manufacture; (2) inadequacies in Design; and (3) inadequate Warnings concerning the hazards or proper methods for safe use." *Union Supply Co. v. Pust*, 583 P.2d 276, 280 n. 1 (Colo. 1978). To prevail under a theory of product liability in Colorado, a plaintiff must prove, among other elements, that a product is defective and unreasonably dangerous and that the plaintiff was injured as a result thereof. *Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1174-75 (Colo 1993); *see also Pust*, 583 P.2d at 282-83.

"Strict liability is not absolute liability and a manufacturer is not required to be the virtual insurer of its products." *Fenton*, 845 P.2d at 1175. The mere occurrence of an accident in connection with the use of a product does not necessarily make the product defective and unreasonably dangerous. *Shultz v. Linden-Alimak, Inc.*, 734 P.2d 146, 148-49 (Colo. Ct. App. 1986) (citing *Kysor Industrial Corp. v. Frazier*, 642 P.2d 908 (Colo.1982)). "[A] manufacturer has no duty to produce the safest product possible, but rather has a duty merely to avoid placing on the market a product which presents an unreasonable risk of harm to others." *Kern v. General Motors Corp.*, 724 P.2d 1365,

1367 (Colo. Ct. App. 1986). "The critical question is whether the manufacturer has created an unreasonable risk of increasing the harm. . . . " *Id*.

Ordinarily, the question of whether a product is in a defective condition and unreasonably dangerous is one of fact for the jury. *Shultz*, 734 P.2d at 149. A trial judge should only invade the fact-finding function of the jury in the clearest cases when the facts are not in dispute. *Pust*, 583 P.2d at 279.

Plaintiff's response brief at page two asserts that Plaintiff was unaware of the defective and unreasonably dangerous condition caused by the clutch cover housing which caused his ankle to be burned. Thus, it appears that Plaintiff is asserting a claim for defective design. However, I agree that Plaintiff has not provided evidence that supports such a claim in his response. Nonetheless, construing the evidence in the light most favorable to Plaintiff as I must for purposes of this, I believe a jury could find that there was a design defect in not including adequate housing over the clutch to keep it from overheating to the point that a person could receive serious burns. Accordingly, I deny Polaris' motion for summary judgment as to this issue.

Plaintiff also asserts in his response brief that Polaris failed to warn of the fact that the clutch cover housing could overheat and cause burns. "A product may be considered to be in a 'defective condition unreasonably dangerous' to the user or consumer, even though faultlessly made, if the manufacturer . . . placed the product into the stream of commerce without giving suitable and adequate warnings or instructions concerning the safe and proper manner in which to use it." *Frazier*, 642 P.2d at 910-11; *see also Pust*, 583 P.2d at 283.

I note that Plaintiff has asserted both a negligence claim and a strict liability claim. The negligence claim refers to lack of warnings in connection with the ATV (Am. Compl., ¶¶ 37-39), while the strict liability claim does not. The Colorado Supreme Court explained the difference between a negligent failure-to-warn claim and a strict liability failure-to-warn case in *Fenton*, 845 P.2d at 1174-75 "Under a negligence theory a plaintiff is required to prove that a manufacturer's failure to warn of a risk fell below an acceptable standard of care." *Id.* at 1175. "Under a strict liability theory, however, the focus of the inquiry is whether the defendant failed to warn of particular risks that were known or knowable in light of the generally recognized and prevailing scientific and technical knowledge available at the time of manufacture and distribution." *Id.*

The Colorado Supreme Court noted that "'[i]f every product that has no warning were defective per se and for that reason subject to strict liability, the mere fact of injury by an unlabelled product would automatically permit recovery. That is not, and has never been, the purpose and goal of the failure-to-warn theory of strict liability.'" *Id.* at 1175 (quotation omitted). "The requirement that warnings or instructions be given is determined by taking into consideration the likelihood of accident and the seriousness of the consequences of failing to warn." *Frazier*, 642 P.2d at 911.

In the case at hand, while Polaris warned that persons riding the ATV should wear protective cover, including boots, Polaris did not warn of the specific issue at hand, *i.e.*, alleged overheating of the clutch cover housing that could cause a burn. I find that there are genuine issues of material fact as to whether the ATV was in a defective condition because of such a lack of warning. This is particularly true given the fact that

it appears Polaris had prior notice of at least one incident of a temperature at the clutch cover high enough to melt the cover and potentially cause a burn injury. Indeed, the issue of whether a product is in a defective condition unreasonably dangerous because of a manufacturer's failure to warn is normally an issue for the jury. *Frazier*, 642 P.2d at 912-13.

Polaris also contends that Plaintiff's injuries would have been avoided if he had heeded Polaris' warning in the instruction manual to always wear protective gear when riding the ATV. Indeed, Polaris asserts that Plaintiff's own expert opines that had Plaintiff been wearing the protective gear, Plaintiff's injury would not have occurred. Ex. A-5 at 4. Essentially, this amounts to an allegation of misuse.

"Misuse is a causation concept which excuses the seller of an admittedly defective product from liability when the misuse and not the defect caused the injury." *White v. Caterpillar, Inc.*, 867 P.2d 100, 107 (Colo Ct. App. 1993). It is applicable where an individual fails to read or heed a manufacturer's instructions and warnings. *Id.* An injured person cannot recover if misuse of the product is the sole cause of damages; if both misuse and a defect cause injury, misuse can constitute comparative fault which reduces recovery under Colo. Rev. Stat. § 13-21-406. *States v. W.D. Werner Co.*, 799 P.2d 427 (Colo. Ct. App. 1990). "However, misuse is not a defense if the consumer's misuse can be reasonably anticipated by the manufacturer." *White*, 867 P.2d at 107.

I find that there are genuine issues of material fact as to whether Polaris could have foreseen the possibility of misuse which allegedly occurred here. A jury could find that it is foreseeable that someone would ride an ATV without protective covering over

their feet. Further, Plaintiff points out that Polaris was in possession of an incident report which reported a similar issue regarding overheating of the clutch cover. The question of foreseeability of misuse is generally a jury determination. *Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322 (Colo. 1986)

Polaris also argues that Plaintiff's failure to warn claim is a new claim which was not raised in the Amended Complaint or the Scheduling Order. As noted above, Plaintiff did assert failure to warn in his negligence claim. Accordingly, summary judgment on this issue is denied as to that claim. I agree with Polaris that Plaintiff did not raise failure to warn in the strict liability claim. However, as this issue was raised in Polaris' reply brief, Plaintiff has not had time to respond to this issue. Accordingly, I decline to address this issue in connection with the summary judgment motion. Instead, Polaris may, if it wishes, raise this issue with the Court at the Final Trial Preparation Conference.

Finally, I grant summary judgment to the extent that Plaintiff may be asserting a claim for breach of express warranty. Plaintiff has not provided any evidence or argument that could support such a claim.

IV.  CONCLUSION

Based upon the foregoing, it is

ORDERED that Polaris Industries, Inc.'s Motion for Summary Judgment (filed June 30, 2008, is **GRANTED** as to the express warranty claim and **DENIED** as to the defective design and failure to warn claims.

Dated: February 10, 2009

                            BY THE COURT:

                            s/ Wiley Y. Daniel
                            Wiley Y. Daniel
                            Chief United States District Judge